UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

UNITED STATES OF AMERICA

   - against -

JOHN CARTAGENA,

         Defendant.

------------------------------------X

S2 10 Cr. 222-2 (RWS)

SENTENCING OPINION

**Sweet, D.J.**

On December 7, 2010, John Cartagena ("Cartagena" or "Defendant") was found guilty of one count of conspiracy to distribute and possess with intent to distribute five grams and more of cocaine, in violation of 21 U.S.C § 846 and one count of attempt to distribute and possess with intent to distribute five grams and more of cocaine, in violation of 21 U.S.C. §§ 841(b)(1)(A), 841(b)(1)(A) and 18 U.S.C. § 2. For the reasons set forth below, Cartagena will be sentenced to 120 months' imprisonment to be followed by 5 years' supervised release. Defendant will forfeit to the United States all property involved in the offense or traceable to it. Cartagena will also be required to pay a special assessment of $200.

**Prior Proceedings**

On October 19, 2010, Indictment S2 10 CR 222 (RWS) was filed in the Southern District of New York.

Count 1 charges that from at least October 2009, through and including March 4, 2010, in the Southern District of New York and elsewhere, Vladimir Alexis Morillo-Vidal, a/k/a "Vladimir Morillo" ("Morillo"), Cartagena, and others known and unknown, conspired to distribute and possess with intent to distribute five grams and more of cocaine, in violation of 21 U.S.C. § 841(b)(1)(A). Count 2 charges that on March 4, 2010, in the Southern District of New York and elsewhere, Morillo-Vidal attempted to distribute and possess with intent to distribute five grams and more of cocaine, in violation of 21 U.S.C. § 841(b)(1)(A). Count 3 charges that on February 28, 2010 in the Southern District of New York and elsewhere, Cartagena distributed and possessed with intent to distribute five grams and more of cocaine, in violation of 21 U.S.C. § 841(b)(1)(A).

On December 7, 2010, Defendant was found guilty of Counts 1 and 3.

Cartagena's sentencing is currently scheduled for December 6, 2011.

**The Sentencing Framework**

In accordance with the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), and the Second Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the advisory Guidelines.  Thus, the sentence to be imposed here is the result of a consideration of:

(1)   the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)   the need for the sentence imposed —

(A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)   to afford adequate deterrence to criminal conduct;

(C)   to protect the public from further crimes of the defendant; and

(D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3

(3)    the kinds of sentences available;

    (4)    the kinds of sentence and the sentencing range
           established for —

           (A)    the applicable category of offense committed
                  by the applicable category of defendant as
                  set forth in the guidelines . . .;

    (5)    any pertinent policy statement . . . [issued
           by the Sentencing Commission];

    (6)    the need to avoid unwarranted sentence
           disparities among defendants with similar
           records who have been found guilty of
           similar conduct; and

    (7)    the need to provide restitution to any victims of
           the offense.

18 U.S.C. § 3553(a).  A sentencing judge is permitted to find

all the facts appropriate for determining a sentence, whether

that sentence is a so-called Guidelines sentence or not.  See

Crosby, 397 F.3d at 114-15.


**The Defendant**


            The Court adopts the facts set forth in the

Presentence Investigation Report ("PSR") with respect to

Cartagena's personal and family history.

**The Offense Conduct**

The following description draws from the PSR. The specific facts of the underlying conduct are adopted as set forth in that report.

On February 28, 2010, an officer with the Nebraska State Patrol ("Officer-1") conducted a traffic stop of a Recreational Vehicle ("RV"). Officer-1 obtained identification from the passenger of the RV that identified him as Cartagena. Officer-1 also obtained identification from the driver of the RV ("CC-1"). Cartagena told Officer-1 that he and CC-1 were headed to New York. Officer-1 obtained oral consent to search the RV from CC-1 and discovered, in a storage area within the RV, approximately 67 kilograms of cocaine. Officer-1 placed Cartagena and CC-1 under arrest.

Another officer of the Nebraska State Patrol ("Officer-2") read CC-1 his Miranda rights, which he waived, and agreed to speak with law enforcement agents. CC-1 admitted that he and Cartagena had separately flown to Phoenix, Arizona, and were transporting the cocaine to New York City. CC-1 later testified at the instant trial, and indicated that CC-1 and

5

Cartagena rented the RV, bought tools to hide the cocaine in the RV and also bought latex gloves to handle the cocaine. Receipts for these items, among others, corroborated CC-1's account. CC-1 also testified that CC-1 and Cartagena concocted a story about a ski trip to tell police officers if they were stopped. Both CC-1 and Cartagena lied to Officer-1 during the traffic stop by telling Officer-1 that they had gone skiing.

CC-1 told law enforcement agents on March 2, 2010, that CC-1 and Cartagena were previously involved in trafficking 23 kilograms of cocaine. CC-1 said that after delivering the cocaine, CC-1 asked Cartagena to accompany him again during a subsequent delivery of the payment of $250,000. In October 2009, CC-1 and Cartagena flew from New York to Los Angeles, California, to deliver the $250,000 which they had hid in electronic equipment.

Cartagena was also interviewed by law enforcement agents on March 2, 2010, and stated that he and CC-1 were on their way to New York. Cartagena also stated that a few days before Halloween in 2009, Cartagena and CC-1 had flown with approximately $250,000 from New York to Los Angeles, California. Cartagena stated he was trying to make money to

assist with his financial situation.

CC-1, under the direction of the Drug Enforcement Administration ("DEA"), delivered what appeared to be 47 kilograms of the cocaine recovered on February 28, 2010 to another defendant not named herein ("CC-2") in Sloatsburg, New York, on March 3, 2010.

On March 4, 2010, CC-2, also working under the direction and monitoring of the DEA, made several phone calls to an individual known as "Bu Bu" (who has not yet been apprehended) regarding the 47 kilograms of cocaine that was to be delivered to Bu Bu. During the recorded call, Bu Bu informed CC-2 that his "brother" would meet with CC-2 in order to collect the cocaine.

On March 4, 2010, under the direction and monitoring of the DEA, CC-2 spoke with Morillo-Vidal, who is believed to be the "brother" referred to by Bu Bu based on a statement Morillo-Vidal made to CC-2 that was overheard by a law enforcement agent, several times on the telephone. Morillo-Vidal informed CC-2 that he was en route to meet CC-2 and provided a description of himself and the vehicle he was driving. CC-2

informed Morillo-Vidal that CC-2 would meet him at a restaurant in Manhattan (the "Restaurant") and that CC-2 would be waiting for him upstairs.

Later in the evening on March 4, 2010, and under the direction and monitoring of the DEA, CC-2 met with Morillo-Vidal at the Restaurant.  When Morillo-Vidal arrived, Morillo-Vidal entered the Restaurant and walked upstairs.  Morillo-Vidal introduced himself to CC-2 and told CC-2 "you spoke with my brother," which is believed to be a reference to Bu Bu.  CC-2 then pointed out CC-2's vehicle to Morillo-Vidal.

CC-2 and Morillo-Vidal exited the Restaurant and walked towards CC-2's vehicle.  CC-2 opened the hatch of CC-2's vehicle which contained two bags of what appeared to be cocaine.  One of the bags was unzipped.  Morillo-Vidal inspected the unzipped bag, removed one bag from CC-2's vehicle, and began to walk towards his vehicle with the bag.

Law enforcement agents then placed CC-2 and Morillo-Vidal under arrest.

Morillo-Vidal was read his Miranda rights, which he

8

waived, and stated that he went to the Restaurant at the direction of Bu Bu. Morillo-Vidal stated that he was unaware that he was picking up narcotics. Morillo-Vidal continued to state that he was there to pick up clothing for a friend who owns a clothing store. Morillo-Vidal stated that the meeting was arranged four days ago and that he had no phone contact with anyone on March 4, 2010, in regards to the meeting at the Restaurant that day. However, phone records showed that Morillo-Vidal had telephone contact with CC-2 and Bu Bu that day.

## The Relevant Statutory Provisions

For Counts 1 and 3, pursuant to 18 U.S.C. §§ 846, 841(b)(1)(A), the mandatory minimum term of imprisonment is 10 years on each count and the maximum term of imprisonment is life.

For Counts 1 and 3, if a term of imprisonment is imposed, a term of at least 5 years supervised release is required on each count, pursuant to 18 U.S.C. §§ 846, 841(b)(1)(A). The maximum term of supervised release on each count is life.

For Counts 1 and 3, Defendant is not eligible for probation because the instant offense is one for which probation has been expressly precluded by statute, pursuant to 18 U.S.C. § 3561(a)(2) and 21 U.S.C. §§ 846, 841(b)(1)(A).

For Counts 1 and 3, the maximum fine that may be imposed is the $4,000,000 per count, for a total of $8,000,000, pursuant to 21 U.S.C. §§ 846, 841(b)(1)(A). A special assessment of $100 per count, for a total of $200, is mandatory, pursuant to 18 U.S.C. § 3013.

**The Guidelines**

The November 1, 2010 edition of the <u>United States Sentencing Commission Guidelines Manual</u> has been used in this case for calculation purposes, pursuant to § 1B1.11(a). The Court finds the following with respect to Defendant's applicable offense level, criminal history, recognition of responsibility, and term of imprisonment:

Counts 1 and 3 are grouped together pursuant to § 3D1.2(d) because the offense level is determined largely on the

10

basis of the total quantity of the controlled substance
involved. The Guideline for the violation of 21 U.S.C. § 846 is
found in § 2D1.1. Since Cartagena was involved in a conspiracy
and the attempt to distribute and possess with intent to
distribute at least 50 kilograms grams but less than 150
kilograms of cocaine, the base offense level is 36, pursuant to
the Drug Quantity Table set out in §2D1.1(c)(3).

Accordingly, the applicable offense level is 36.

As outlined below, the Defendant has been convicted of
three felony crimes of violence. Since the instant offense
involves a controlled substance offense and the Defendant was 18
years or older at the time of its commission, the Defendant is a
career offender within the meaning of § 4B1.1 of the Guidelines.
The offense level determined under § 4B1.1 is 37.

On October 3, 1988, Cartagena was convicted of
Criminal Possession of Stolen Property in the 3rd Degree in
Queens County Supreme Court in Queens, NY. On September 28,
1989, Defendant was sentenced to 6 months' imprisonment and 5
years probation. On June 7, 1980, Cartagena was resentenced to
2 to 6 years imprisonment after violating his probation. In

November 10, 1995, Cartagena was paroled. Pursuant to §§ 4A1.1(a) and 4A1.2(e)(1), this conviction warrants three criminal history points.

On March 26, 1990, Cartagena entered the back seat of a licensed taxi vehicle, displayed a knife and demanded money. He stole $125.00 from the victim. Cartagena was convicted of Attempted Robbery in the 1st Degree: Cause Serious Injury in Queens County Supreme Court in Queens, NY. On June 7, 1990, Cartagena was sentenced to 57 months to 114 months' imprisonment. On November 10, 1995, Cartagena was paroled, and on January 16, 1998, parole was revoked due to violation. Pursuant to §§ 4A1.1(a) and 4A1.2(e)(1), this conviction warrants three criminal history points.

On February 11, 1990, Cartagena stole from another victim in Queens, NY. The arrest report reflected that the Defednant forcibly removed the victim's property at knife point causing the victim to sustain a laceration to his hand. On August 13, 1990, Cartagena was convicted of Robbery in the 1st Degree: Use/ Threatens Use of Dangerous Instrument in Queens County Supreme Court in Queens, NY. On October 16, 1990, he was sentenced to 57 months to 114 months' imprisonment. Cartagena

12

was paroled on January 10, 1995. Pursuant to §§ 4A1.1(a) and 4A1.2(e)(1), this conviction warrants three criminal history points.

On May 11, 1996, Cartagena entered a cab and placed a green handled knife against the driver's throat causing a laceration of approximately four inches in length. He demanded money, reached into the pouch around the victim's waist and removed a sum of currency. On May 15, 1996, Cartagena was convicted of Robbery in the 2nd Degree: Causes Physical Injury in Queens County Supreme Court in Queens, NY. On December 4, 1997, he was sentenced to 15 years' imprisonment. Cartagena was paroled on March 20, 2009. Pursuant to §§ 4A1.1(a) and 4A1.2(e)(1), this conviction warrants three criminal history points.

On October 7, 1997, while in custody at Rikers Island in the Bronx, NY, a hacksaw blade, approximately six inches in length, was found in Cartagena's jail cell. On October 20, 1997, Cartagena was convicted of Promoting Contraband to Prisoners in the 2nd Degree in Bronx County Criminal Court in the Bronx, NY. On March 27, 1998, he was sentenced to time served. Pursuant to § 4A1.2(e)(3), this conviction warrants

zero criminal history points.

The criminal convictions above result in a subtotal
criminal history score of 12.

At the time the instant offense was committed, the
defendant was on parole for his conviction of Robbery - 2nd
Degree: Causes Physical Injury in Queens County Supreme Court
(Case No. 1979-96). Pursuant to §4A1.1(d), two points are added.

The total of the criminal history points is 14.
According to the sentencing table at Chapter 5, Part A, 14
criminal history points establish a Criminal History Category of
VI. Since the defendant has three prior felony convictions
involving crimes of violence, he meets the criteria for Career
Offender, and his Criminal History Category must be Category VI
pursuant to §4B1.1.

Based on a total offense level of 37 and a Criminal
History Category of VI, the Guidelines range for imprisonment is
360 months on each count to run concurrently.

The Guidelines range for a term of supervised release

14

is five years on each count, pursuant to § 5D1.2(c).

Defendant is not eligible for probation because the instant offense is one for which probation has been expressly precluded by statute, pursuant to § 5B1.1(b)(2).

The fine range for the instant offense is from $20,000 to $8 million, pursuant to § 5E1.2(c)(3)(A) and (c)(4). Subject to Defendant's ability to pay, in imposing a fine, the Court shall consider the expected costs to the Government of any imprisonment, probation, or supervised release pursuant to § 5E1.2(d)(7). The most recent advisory from the Administrative Office of the United States Courts suggests a monthly cost of $2,357.01 to be used for imprisonment, a monthly cost of $328.20 for supervision, and a monthly cost of $2,153.22 for community confinement.

## The Remaining Factors of 18 U.S.C. § 3553(a)

Having engaged in the Guidelines analysis, this Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) to impose a sentence "sufficient, but not greater than necessary," as is required by the Supreme Court's

decision in Booker, 543 U.S. 220, and the Second Circuit's decision in Crosby, 397 F.3d 103.

In light of the Court's statutory responsibility "to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing," Kimbrough v. United States, 552 U.S. 85, 102 (2007) (quoting 18 U.S.C. § 3553(a)), and having considered the Guidelines and all of the factors set forth in § 3553(a), it is determined that a downward departure from the Guidelines sentence is warranted in the instant case.

Under 18 U.S.C. § 3553(a)(1), the Court considers "the nature and circumstances of the offense and the history and characteristics of the defendant." Pursuant to 18 U.S.C. § 3553 (2)(A), the Court weighs the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.

Cartagena related that he suffers from neurological damage on the right side of his shoulder and arm. He explained how the damage was caused by several medical procedures that were done incorrectly after he suffered from a "slipped disc" while previously incarcerated at Attica Correctional Facility in

Attica, New York.

Defendant reported no history of drug use and attributed that to his family's history of drug and alcohol abuse, specifically his sister's death from a drug overdose and his father's alcoholism.

Cartagena has admitted that he has had difficulty adjusting to life outside of prison following his release on parole in March 2009. He indicated, for example, that he briefly obtained employment as a personal trainer but found it to be "overwhelming." Cartagena has previous experience as a personal trainer and hopes to work in that field again. However, he felt he needed more time to adjust following his release from prison in 2009 and at the time considered seeking mental health treatment to deal with this issue. Healso disclosed that he has struggled with insomnia since his childhood and was only sleeping a total of one to two hours a night after his release in 2009. He indicated that he is currently prescribed medication to help him sleep and that he is also prescribed medication related to neurological damage in his right shoulder and arm. At the time of the instant offense, Cartagena was reportedly living with his wife and their son, age 25, both of

whom are gainfully employed.

In light of the nature and circumstances of the offense, the history and characteristics of the Defendant, the need for the sentence to promote respect for the law and to provide just punishment for the offense, the Court finds that a downward departure from the Guideline sentence is appropriate to impose a sentence "sufficient, but not greater than necessary" under 18 U.S.C. § 3553(a).

**The Sentence**

For the instant offense, Cartagena will be sentenced to 120 months' imprisonment and 5 years' supervised release.

Cartagena is directed to report to the nearest United States Probation Office within seventy-two hours of release to commence his term of supervised release. It is recommended that Defendant be supervised by the district of his residence.

As mandatory conditions of his supervised release, Cartagena shall: (1) not commit another federal, state, or local crime; (2) not illegally possess a controlled substance;

(3) not possess a firearm or destructive device; and (4) cooperate in the collection of DNA as directed by the probation officer. The Defendant shall refrain from any unlawful use of a controlled substance and shall submit to one drug testing within fifteen (15) days of placement on probation or supervised release and at least two unscheduled drug tests thereafter, as directed by the probation officer.

Furthermore, the standard conditions of supervision (1-13), set forth in the judgment, shall be imposed with the additional special conditions:

(1)   Defendant shall provide the probation officer with access to any requested financial information.

(2)   Defendant shall not incur new credit charges or open additional lines of credit without the approval of the probation officer unless Defendant is in compliance with the installment payment schedule.

(3)   Defendant shall submit his person, residence, place of business, vehicle, or any other premises under his control to a search on the basis that the probation officer has

reasonable belief that contraband or evidence of a violation of the conditions of the release may be found. The search must be conducted at a reasonable time and in a reasonable manner. Failure to submit to a search may be grounds for revocation. Defendant shall inform any other residents that the premises may be subject to search pursuant to this condition.

(4) Defendant shall obey the immigration laws and comply with the directives of immigration authorities.

In consideration of all the factors set forth in 18 U.S.C. § 3572(a), it does not appear that the Defendant is able to pay a fine, and so the fine in this case shall be waived.

As a result of committing the offense alleged in Counts 1 and 3, Defendant shall forfeit to the United States, pursuant to 21 U.S.C. § 853, including but not limited to, any and all property constituting or derived from any proceeds obtained directly or indirectly as a result of the said violations and any and all property used or intended to be used in any manner or part to commit and to facilitate the commission of the violations alleged in Counts 1 and 3.

A special assessment of $200, payable to the United States, is mandatory and shall be due immediately.

The terms of this sentence are subject to modification at the sentencing hearing scheduled for December 6, 2011.

It is so ordered.

**New York, NY**
**November** _14_ **, 2012**

_____
ROBERT W. SWEET
U.S.D.J.